



# REQUEST UNDER THE FREEDOM OF INFORMATION ACT

### *EXPEDITED PROCESSING REQUESTED*

June 14, 2024

United States Department of Energy
**By FOIA.gov**

**Re: FOIA Request – Certain described "chat" correspondence over a three-day period**

Dear Records Officer,

On behalf of Government Accountability & Oversight, a non-profit public policy institute with research, investigative journalism and publication functions, as part of a transparency initiative seeking public records relating to environmental and energy policy and related activities at various agencies at all levels of government, which includes an active campaign of broad dissemination of public information obtained under open records and freedom of information laws to the broader population, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, I hereby request copies of **the below-described records for each of three named custodians—1) David Turk, 2) Brad Crabtree, and/or[1] 3) David Crane**—dated at any time over a **three-day period (January 24, 2024 through January 26, 2024, inclusive)**:

> *Non-email, non-text-message* electronic instant messages ("chats"[2]), which messages were sent to, from or which (also) copy or include Ali Zaidi (White House), Jennifer Granholm (Department of Energy), and/or Chris Davis (Department of Energy).

Please note that this is a discrete request.

The instant request meets the conditions for expedited processing including, as set forth in 10 CFR §1004.5(d)(6), "Requests will be processed out of order and processed as soon as

---

[1] You need not produce duplicate copies of records, i.e., should treat duplicate copies as non-responsive.

[2] This includes Chat logs/transcripts sent/received over the covered period on Microsoft 365 or Teams chats, channel messages, Slack, Skype, BlueJeans, Jabber, Cisco Webex, Adobe Connect, Google Meet, Google Hangouts, GoTo Meeting, FaceTime, Houseparty, and/or Zoom or any similar platform.

This request covers the content of all such chats, including i) entire conversations, one-to-one or group, ii) not limited to those associated with meetings, but covering all Chats given that these Chat functions can be and are in fact used by government employees as alternatives to email. This requires processing both a) chats from calls, and b) chats not from calls, which are separately stored on the respective program/ application) as alternative to email even when there is no, e.g., Teams or Zoom meeting in session.

practicable when it is determined, based upon information supplied by the requester or otherwise known to the DOE, that a compelling need exists to provide the records in an expeditious manner. The FOIA states that a compelling need exists when… a request is submitted by a person primarily engaged in disseminating information and there is an urgency to inform the public about actual or alleged Federal Government activity." It does for the following reasons.

Regarding the particular urgency to inform the public about the government activity involved in records responsive to this request, beyond the public's right to know about government activity generally, Requester certifies to the best of its information and belief that DoE produced a LNG export study in 2023[3]—announced in January 2024—which 2023 report senior political officials then buried, keeping it from the public's view as the current administration sought to engineer a "pause" of liquified natural gas (LNG) exports, which it did as part of a major media rollout in January 2024[4]. This reversal, following a political pressure campaign underwritten by substantial, ideological donors[5], was made purportedly so as to study the macroeconomic outcomes under various LNG export scenarios, including the impact on emissions, the domestic economy, natural gas prices, jobs, etc, which, Requester states on information and belief, was what the 2023 report assessed but which answers the administration did not find helpful. In response to a strong negative domestic and international reaction to this policy reversal the administration indicated it would conclude this "pause" by the end of last month, which has now come and gone.[6] The engineered "pause" had and continues to have major geopolitical and economic consequences of great national and international interest.

Any responsive records will reflect what Requester understands was a 'mad scramble' to frame and roll out the "pause" for pretextual reasons are of extraordinary and timely public interest.

The information is therefore most appropriate for expedited processing such that the typical, drawn-out response to a FOIA request will leave the requested public information much less relevant for FOIA's purpose of timely informing proper consideration of federal policy and its other activities, including here the suppression of inconvenient expert analysis. Specifically, the public must have the ability to examine and review the requested materials in time to have their say on this major policy reversal, which also is a prerequisite to seeking judicial review of any agency actions under the Administrative Procedure Act or other laws. The Executive Branch cannot be permitted to shield the fact or content of its receipt and suppression of what it views as unacceptably positive news which stands in the way of and argues against desired public policy.

Requester therefore intends to disseminate the information it obtains for purposes including to facilitate First Amendment activity by citizens, journalists, and others among the highly interested and broad population interested in the policy reversal to which the described records are most relevant (the LNG export "pause"), who plainly also include citizens who might seek to

---

[3] These are regularly produced *and released* by DoE, see https://www.energy.gov/fecm/articles/lng-export-studies.
[4] https://www.whitehouse.gov/briefing-room/statements-releases/2024/01/26/fact-sheet-biden-harris-administration-announces-temporary-pause-on-pending-approvals-of-liquefied-natural-gas-exports/
[5] Benoit Morenne and Andrew Restuccia,, "How the Rockefellers and Billionaire Donors Pressured Biden on LNG Exports," Wall Street Journal, Feb. 8, 2024, https://www.wsj.com/us-news/climate-environment/how-the-rockefellers-and-billionaire-donors-pressured-biden-on-lng-exports-c1bf0ff8
[6] Ben Lefebvre, "DOE expects LNG permit pause to end by March, official says," Politico, April 18, 2024, https://subscriber.politicopro.com/article/2024/04/doe-says-to-expect-lng-permit-pause-to-end-by-march-00153036

==timely petition the government for redress or to educate those affected by government activity while such consideration(s) and actions still can have a timely impact.==

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release.

Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, recipients, date, length, general subject matter, and location of each item; and

2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.

If you should seek to withhold or redact any responsive records or parts thereof, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. §552(b). Please correlate any redactions with specific exemptions under FOIA.

These search parameters are sufficiently narrow and precise in their clear delineation for described records over specific dates sent to or from specified Office employees.

In the interests of avoiding delay with back-and-forth, GAO is willing to provisionally pay fees up to $200 in the event the Office denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination. Nonetheless, in this event, please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $200. Given the nature of the records responsive to this request, all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

**The Office Owes Requester a Reasonable Search**

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). In this situation, there should be no difficulty in finding these documents.

**The Office Must Err on the Side of Disclosure**

It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)). Accordingly,

when an agency withholds requested documents, the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989); *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d 508, 515 (D.C. Cir. 1996). The act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

Withholding and Redaction

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege and to which specific responsive or potentially responsive record(s) such objection applies. Pursuant to high-profile and repeated promises and instructions from the previous President and Attorney General we request the Office err on the side of disclosure and not delay production of this information of great public interest through lengthy review processes over which withholdings they may be able to justify. In the unlikely event that the Office claims any records or portions thereof are exempt under any of FOIA's discretionary exemptions, we request you exercise that discretion and release them consistent with statements by a recent-past President and Attorney General, *inter alia*, that "**The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over, starting today" (President Barack Obama, January 21, 2009), and "Under the Attorney General's Guidelines, agencies are encouraged to make discretionary releases. Thus, even if an exemption would apply to a record, discretionary disclosures are encouraged**." (Department of Justice, Office of Information Policy, OIP Guidance, "Creating a 'New Era of Open Government'").

Further, the current Attorney General has published a statement that "Transparency in government operations is a priority of this Administration and this Department." Attorney General's FOIA Guidelines (March 2022).

Nonetheless, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. §552(b). We remind the Office that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). **As an example of how entire records should not be withheld when there is reasonably segregable information, we note**

**that at bare minimum basic identifying information** (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative".

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. See *Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959 (D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. Department of Justice*, 830 F.2d at 223-24.

**Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index.** If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

Please provide responsive documents in complete form. Any burden on the Office will be lessened if it produces responsive records without redactions and in complete form.

We appreciate the inclusion of an index of redacted information and records withheld in full.

**Fee Waiver Request**

**Our request for fee waiver is in the alternative, first for reasons of significant public interest, and second, on the basis of the GAO's status as a media outlet**. See, e.g., Securities & Exchange Commission 23-02880-FOIA, 23-02881-FOIA, 24-00157-FOIA, 24-00290-FOIA, 24-00291-FOIA, 24-01016-FOIA. The Office must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as GAO access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with

requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information" 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I. GAO Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

First, GAO plainly qualifies as a media requester as shown by the frequency with which we broadly disseminate our work and with which the records we obtain and our work is broadly disseminated in or cited the news media (https://govoversight.org) showing an intention and ability to broadly disseminate responsive information. Further, in the alternative thus, the Agency must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "government operations or activities," (2) whether the disclosure "is likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "is likely to contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. As shown below, GAO and this request meet each of these factors.

   A.   The Subject of This Request Concerns "the Operations and Activities of the Government."

**For this prong w refer to the agency activities in the highlighted, detailed discussion of the reason this request qualifies for expedited processing, above.**

   B.   Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

As described, above, the requested records inherently are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

The requested records pertain to that described in "A", immediately above.

Any records responsive to this request therefore are likely to have an informative value and are "likely to contribute to an understanding of Federal government operations or activities". We note President Biden's environmental and energy policy agenda has been the subject of substantial media interest and promotional efforts. See also the media coverage cited, *supra*.

Disclosure of the requested records will allow GAO to convey to the public information about the above-described policy reversal to curb LNG exports and, therefore inherently, production,

purportedly to conduct study which, we state on information and belief, DoE had already conducted. Once the information is made available, GAO will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of government operations and activities.

> C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the Agency's Claims Re: a Major Policy Reversal

For reasons already described, the requested records will contribute to public understanding of this decision made purportedly to study an issue immediately on the heels of receiving—we state on information and belief—unwanted information of precisely the type purportedly now sought. As explained above, the records will contribute to public understanding of this topic. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through GAO's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa.2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate any aspect of the claim that this "pause" was instituted to study matters that, we understand, the administration had just studied, which study it buried. We are also unaware of any previous release to the public of these or similar records. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations".

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of this described innovative strategy. The public is always well served when it knows how the government conducts its activities. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about the Agency's

interaction with pressure groups seeking to influence Agency decision making.

      D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

GAO is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the above-described administration decision and claims made. There is to our knowledge no information that is publicly available addressing the issue and actions we describe.

      II. GAO has the Ability to Disseminate the Requested Information Broadly.

GAO is dedicated to obtaining and disseminating information relating to energy and environmental public policy. A key component of being able to fulfill this mission and educate the public about these duties is access to information that articulates what obligations exist for senior government officials. has both the intent and the ability to convey any information obtained through this request to the public. GAO publishes its findings regularly through the organization's website, https://govoversight.org. This work also is frequently cited in newspapers and trade and political publications.[7]

Through these means, GAO will ensure:
(1)    that the information requested contributes significantly to the public's understanding of the government's operations or activities;
(2)    that the information enhances the public's understanding to a greater degree than currently exists;
(3)    that GAO possesses the expertise to explain the requested information to the public; (4) that GAO possesses the ability to disseminate the requested information to the general public;
(5) and that the news media recognizes GAO as a reliable source in the field of government officials' conduct.

Public oversight and enhanced understanding of the Administration's duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney v. U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). GAO need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for GAO to show how it distributes information to the public generally. *Id*.

---

[7] *See*, e.g., Editorial, *Wall Street Journal*, "Biden's 'BackDoor' Climate Plan," March 17, 2021, https://www.wsj.com/articles/bidens-backdoor-climate-plan-11616020338; Stuart Parker, "Conservative Group Says States' Ozone Suit 'Trojan Horse' for GHG Limits," Inside EPA, February 24, 2021; Larry Hogan, "How Biden's CMS Targeted Florida," Wall Street Journal, January 30, 2024, https://www.wsj.com/articles/how-bidens-cms-targeted-florida-medicaid-desantis-bc5dab9c; Ryan Mills, "Biden Health Officials Targeted Red States with Medicaid Program Audits," National Review, January 18, 2024, https://www.nationalreview.com/news/biden-health-officials-targeted-red-states-with-medicaid-program-audits/; Chris Horner, "EPA's Deceptive Climate Regulations Won't Stand in Court," Wall Street Journal, May 1, 2024, https://www.wsj.com/articles/bidens-climate-deception-wont-stand-in-court-suite-west-virginia-pretext-regan-0fae5111.

III. Obtaining the Requested Records is of No Commercial Interest to the Requester

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to GAO's role of educating the general public. GAO is a nonprofit public policy institute dedicated to transparency in public energy and environmental policy and "disseminating research, sharing facts and truths, engaging at the local level and interacting with the media". Due to its nonprofit mission, GAO has no commercial interest and will realize no commercial benefit from the release of the requested records.

Therefore, **GAO first seeks waiver of any fees** under FOIA on the above significant public interest basis.

**In the alternative**, GAO requests a waiver or reduction of fees as a representative of the news media. The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. As GAO is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F.Supp.2d. 1 (D.D.C. 2010). Alternately and only in the event the  refuses to waive our fees under the "significant public interest" test, which Requester would then appeal while requesting the proceed with processing on the grounds that GAO is a media organization, the Office  must explain any denial of treatment of GAO as a media outlet. GAO asks for a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by a representative of the news media…").

The Office must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

**Conclusion**

We request the Office to provide particularized assurance that it is reviewing some quantity of records with an eye toward production on some estimated schedule, so as to establish some reasonable belief that it is processing our request. 5 U.S.C.A. § 552(a)(6)(A)(i); see also *CREW v. FEC*. The Office must at least inform us of the scope of potentially responsive records, including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions; FOIA specifically requires the Office to immediately notify GAO with a particularized and substantive determination, and of its determination and its reasoning, as well as GAO's right to appeal; further, FOIA's unusual circumstances safety valve to extend time to make a determination, and its exceptional circumstances safety valve providing additional time for a diligent Office to complete its review of records, indicate that responsive documents must be collected, examined, and reviewed in order to constitute a determination. *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013). *See also*, *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221; 2011 U.S. Dist. LEXIS 110396 at *14 (D.D.C. Sept. 28, 2011) (addressing "the statutory requirement that [agencies] provide estimated dates of completion").

There should be no need to make a rolling production of records, given the specificity of the request and implausibility of a large number of responsive records. I request the Office furnish records to my attention as soon as they are identified, preferably electronically, but as needed then to my attention, at the address below. We inform the Office of our intention to protect our appellate rights on this matter at the earliest date should the Office not comply with FOIA per, *e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).

GAO looks forward to your response. Please direct all records and any related correspondence or questions to my attention at the address below. Respectfully submitted,

>Joe Thomas
>Joe@govoversight.org
>30 N. Gould Street, #12848
>Sheridan, WY 82801
>(434) 882-4217